# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**WILLIE J. GREEN**                                                              **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 3:12-CV-153-CWR-FKB**

**TIC-THE INDUSTRIAL COMPANY**                                                   **DEFENDANTS**
**AND JOHN DOES 1-5**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant TIC-The Industrial Company's ("TIC") Motion to Dismiss, or, In the Alternative, to Stay Proceedings and Compel Arbitration. The motion is GRANTED.

## I. BACKGROUND

Plaintiff Willie J. Green ("Green"), a licensed journeyman electrician with more than twenty years experience, alleges that he began working for TIC at its Shreveport, Louisiana site on or about March 12, 2009. After Green was promoted to electrical lead man, and later transferred to the start-up crew, he sought a permanent start-up position. Green believes that he was denied the position because of his race and that he was retaliated against for making complaints of racial discrimination to the TIC's Human Resources Department.

On March 2, 2012, Plaintiff filed a complaint alleging violations of Sections 703(a) and 704(a) of Title VII of the Civil Rights Act of 1964. Green alleges that the Defendant intentionally deprived him of employment opportunities with malice or reckless indifference, such that his employment status was adversely affected because of his race. Green asks for injunctive relief, pecuniary and non pecuniary damages, punitive damages, declaratory relief, and attorneys fees. Docket No. 1-2.

TIC moves to dismiss pursuant to Section 3 of the Federal Arbitration Act ("FAA"). *See* Docket No. 2. It contends that "Plaintiff submitted a signed Application for Employment containing the Arbitration Agreement." Docket No. 7. TIC refers to the portion of the Application for Employment describing its arbitration policy. That description appears on the last page of the Application under the heading "ARBITRATION OF CERTAIN DISPUTES" and reads, in part, as follows:

> TIC's arbitration policy applies to claims by the employee as well as claims by the employer. The policy provides as follows: Except for certain exceptions . . . all claims seeking damages (including punitive damages), injunctive relief, reinstatement and/or any other legal or equitable form of relief arising out of or in any way related to your employment are all subject to final and binding arbitration in accordance with the most current Rules of the American Arbitration Association for Resolution of Employment Disputes.

Docket No. 2-1. Applicants also acknowledged that they were aware of the arbitration policy, and agreed to be bound by its terms as a condition of their employment. These conditions were expressed in the last paragraph, immediately preceding the applicant's signature line. That paragraph reads:

> I ACKNOWLEDGE THAT I HAVE READ AND FULLY UNDERSTAND THE SECTIONS OF THIS APPLICATION ENTITLED "ARBITRATION" AND "NOTICE TO APPLICANTS" AND I FURTHER UNDERSTAND THAT, IF EMPLOYED BY TIC, MY EMPLOYMENT AND ANY POST-EMPLOYMENT MATTERS RELATING TO, OR ARISING OUT OF MY EMPLOYMENT WILL BE SUBJECT TO THE CONDITIONS STATED THEREIN AND THAT THOSE CONDITIONS ARE EXPRESS CONDITIONS PRECEDENT TO MY EMPLOYMENT.

*Id.* The arbitration policy is repeated in "JLS Partners, a TIC/S&L Joint Venture Statement of JLSP Jobsite and Drug and Alcohol Policies" ("JLSP Jobsite Policies"). *Id.* Paragraph 27 of that document repeats TIC's arbitration policy as it appeared in the Application for Employment.

And, at Paragraph 28(i), the following language appears just above the signature line, asking applicants to reaffirm that they understand TIC's arbitration policy and that they agree to be bound by its terms:

> The undersigned hereby understands, agrees, and acknowledges . . . That he/she has read the arbitration requirements detailed in both the foregoing jobsite policies (Paragraph 27) and his/her employment application and agrees to be bound by those requirements both during his/her employment with JLSP/TIC and at all times thereafter.

*Id.* TIC has provided "true and correct" copies of both documents, signed by Green on May 12, 2009. *Id.* ¶¶ 4-5. TIC argues that this lawsuit must be dismissed, or stayed pending arbitration, per the terms of its agreement with Green.

Green contests the motion, Docket No. 6, and TIC has filed its rebuttal, Docket No. 5. This Court has personal and subject matter jurisdiction and is prepared to rule.

## II. ANALYSIS

The Federal Arbitration Act provides that written provisions for arbitration are valid, irrevocable, and enforceable; it requires that districts courts "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed . . . absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Arbitration clauses are enforceable in the employment context. *Circuit City Stores Inc. v. Adam*, 532 U.S. 105, 119 (2001). And, Title VII claims are subject to arbitration. *Buckhalter v. J.C. Penney Corp.*, 3:11-cv-752, 2012 WL 4468455, *2 (S.D. Miss. Sept. 25, 2012) (citing *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991)).

In considering a motion to compel arbitration, the Court first must determine whether the parties agreed to arbitrate the dispute in question. Then, the Court must determine whether there is any federal statute or policy which renders the claims non-arbitrable. *Black v. Murphy Oil*

3

*USA, Inc.*, 1:10-cv-128, 2010 WL 3717245, \*1 (N.D. Miss. Sept. 14, 2010) (citing *Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). Whether a valid agreement to arbitrate exists is determined by state contract law. *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *Hawthorne v. Trucker Trailer and Equip., Inc.*, 3:11-cv-518, 2012 WL 3965486, \*1 (S.D. Miss. Sept. 11, 2012).

Green makes two arguments opposing the existence of a valid arbitration agreement. First, he argues that there was no enforceable agreement because the document he signed was called "an application for employment, not an employment contract." Docket No. 6, ¶ 4. But that assertion is incorrect. Under Louisiana law,[1] an enforceable contract need only satisfy the following requirements: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Miller v. Am. Gen. Fin. Corp.*, 02-0348, 2002 WL 2022536, \*4 (E.D. La. Sept. 4, 2002) (citing *Provenza v. Cent. & Sw. Serv., Inc.*, 775 So. 2d 84, 89 (La. App. 2 Cir. 2000)). It does not matter, therefore, what the agreement is called, so long as those elements are satisfied.

Second, Green argues that there was no agreement because he signed the document after he "was told that if he refused to sign the application with the arbitration provision, he would not

---

[1] Because this lawsuit concerns an arbitration agreement that was executed in the state of Louisiana, concerning employment that was performed in Louisiana, this Court must first determine which state's law applies. "Choice of law questions in Mississippi are governed by the 'center of gravity'/'most significant relationship' test as set forth in the Restatement (Second) of Conflicts of Law." *Williams v. Liberty Mut. Ins. Co.*, 2:10-cv-205, 2011 WL 5183572, at \*3 (S.D. Miss. Oct. 31, 2011) (citing *Boardman v. United Serv. Auto Assn.*, 470 So. 2d 1024, 1031 (Miss. 1985)). "Mississippi courts have routinely relied on the Restatement (Second) of Conflict of Laws for choice of law analyses." *Id.* (citing *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 436 (Miss. 2006)). The Restatement provides that where parties have not provided a specific choice of law provision in their contract, "[t]he rights and duties of the parties with respect to an issue in the contract are determined by the local law of the state [] which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188. Louisiana is the state with "the most significant relationship to the transaction and the parties" at issue. Therefore, Louisiana contract law will decide the issue of contract formation.

be able to work." Docket No. 6, ¶ 4. Green's assertion, however, does nothing to contradict a finding that he freely consented to be bound by TIC's arbitration policy.

Here, the important consideration is that Green does not deny signing either of the agreements proffered by TIC. Those agreements discuss TIC's arbitration policy in great detail. Absent some challenge to its validity, the appearance of Green's signature on both his employment application, Docket No. 2-1 at 4, and JLSP Jobsite Policies, Docket No. 2-1 at 17, should be taken as evidence that he agreed to be bound by TIC's arbitration policy. *See, e.g.*, *Bibbs v. House of Blues New Orleans Rest. Corp.*, No. 10-82, 2011 WL 1838783, at \*6 (E.D. La. May 13, 2011) ("It is well-established Louisiana Law that a party signing a contract is presumed to have consented to its contents . . . A signature is not a mere ornament.") (quotations and citations omitted). *Accord Turney v. Marion Cnty. Bd. of Educ.*, 481 So. 2d 770, 774 (Miss. 1985) ("Ordinarily one of the acts forming part of the execution of a written contract is the signing of it [for] . . . [t]he object of a signature is to show mutuality o[f] assent.") (quoting 17 C.J.S. Contracts § 62 (1963)). For the foregoing reasons, the Court finds that Green consented to be bound by TIC's arbitration policy.

Separately, Green argues that he is exempt from the FAA under 9 U.S.C. § 1. But this argument also fails. Section 1 provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The Supreme Court has construed this language quite narrowly. The Court holds that "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Because Green was employed as an electrician—not a transportation worker—he is not covered by the Section 1 exemption.

## III. CONCLUSION

Because a valid and enforceable arbitration agreement exists, covering the entirety of the present dispute, the Court finds that this case should be dismissed. Accordingly, the Court GRANTS Defendant's Motion to Dismiss, or, In the Alternative, to Stay Proceedings and Compel Arbitration. Plaintiff is ordered to arbitrate his claims and nothing remains to be litigated in this Court. Any party may move to reopen this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrator. A separate Final Judgment will issue this day.

SO ORDERED AND ADJUDGED, this the 19th day of October, 2012.


s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE